1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DOGRA LAW GROUP PC
SHALINI DOGRA, (Admitted Pro Hac Vice)
*Shalini@dogralawgroup.com*
2219 Main Street, Unit 239
Santa Monica, CA 90405
Telephone: (747) 234-6673
Facsimile: (310) 868-0170
*Attorney for Plaintiff, THOMAS BULL*

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THOMAS BULL, an Individual;<br><br>Plaintiff,<br><br>v.<br><br>ALEX MASHINSKY, an Individual; KRISTINE MASHINSKY, an Individual; and DOES 1 through 25, Inclusive,<br><br>Defendants. | **PLAINTIFF'S COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |

Plaintiff on behalf of himself, through his undersigned counsel for this Complaint against Alexander and Kristine "Krissy" Mashinsky, alleges as follows:

## **INTRODUCTION**

1.     Between 2017 and at least August 2022, Defendant Alex continuously orchestrated and perpetuated a fraud scheme that spanned nearly six years, and tricked several hundred thousand individuals worldwide out of billions of dollars.  As detailed below,  Defendant Alex deliberately set up, direct and organized various cryptocurrency lending companies specifically in a manner that he could deceive countless individuals, including Plaintiff, out of their money. Under the guise of his cryptocurrency-related businesses,  Defendant Alex used customers' money as his own personal piggy bank. His wife, Defendant Kristine, actively helped Defendant Alex in his deceptive tactics

and fraudulent marketing schemes. Ultimately, Defendants Alex and Kristine stole at least $700,000.00 from Plaintiff. Cumulatively, they robbed at several billion dollars from customers.

2.     Starting in 2018, Defendants Alex and Kristine engaged in a scheme to defraud hundreds of thousands of individuals all across the nation and world, by using false and misleading representations to induce people to deposit billions of dollars in digital assets with cryptocurrency lending companies that Defendant Alex had co-founded and headed as a chief executive officer. These cryptocurrency lending companies included: Celsius Network Inc., Celsius Networks Lending LLC, Celsius US Holdings, LLC, Celsius Network LLC, Celsius Lending LLC, Celsius Mining LLC and Celsius KeyFi LLC. (hereinafter collectively referred to as "the Celsius Company."). Defendant Alex's deceptive tactics included using various social media platforms, including Twitter and YouTube, to promote the Celsius Company as a safe alternative to banks, while concealing the reality that the Celsius Company was actually engaged in highly risky investment strategies. Defendant Alex's wife, Defendant Kristine bolstered her husband's dishonest scheme to defraud individuals by disseminating lies about the Celsius Company throughout her own social media accounts. Defendant Kristine knew the information her husband was marketing about the Celsius Company reflected material misrepresentations, and still chose to publicize them and help Defendant Alex mislead several hundred thousand individuals. Furthermore, in addition to marketing material misrepresentations, Defendants Alex and Kristine also took concerted efforts to hide critical truths and subjected Plaintiff to detrimental omissions on a pervasive and systematic basis, all with the intention to increase their personal wealth at Plaintiff's expense.

3.     Defendant Alex was the public face of the Celsius Company, and served as one of its founders and its sole chief operating officer. In hundreds of interviews, blog posts and livestreams, Defendant Alex promised customers such as Plaintiff and investors high yield with minimal risk. He assured these individuals and entities that their

digital assets would be as protected with the Celsius Company as they are with a bank, and that the Celsius Company would always act in their best interest. While these promises proved to be convincing and helped Defendant Alex convince people all over the world to deposit nearly $20 billion in digital assets, the claims that Defendant Alex promoted were entirely untruthful. In reality, at the direction of Defendant Alex, the Celsius Company invested customers' deposits into significantly risky ventures, including uncollateralized loans and investments in unregulated decentralized finance platforms.

4.     When the Celsius Company incurred losses on its unsound and risky investments, Defendant Alex did not tell Plaintiff, or the Celsius Company's other customers and investors, about the losses. Instead, Defendant Alex opted to cover up the losses and mislead them about the Celsius Company's financial strength. To perpetuate these lies, Defendant Alex relied on tactics such as promising to pay yields to attract new deposits, telling investors to refrain from withdrawing their assets, and making claims about investing their funds safely. That is, in the wake of losing money on risky investments, Defendant Alex knowingly told Plaintiff and similarly situated customers that the Celsius Company was doing the opposite and making sound investments. Without doubt, several thousand individuals, including Plaintiff were persuaded to invest in Celsius because of Defendant Alex's false promises that the Celsius Company would keep their assets secure and generate high yields through low-risk investments. To ensure that individuals fell for her husband's misrepresentations, Defendant Kristine promoted his lies about the Celsius Company throughout her social media accounts.

## THE PARTIES

5.     Plaintiff is a citizen and resident of  Australia. During the relevant time period of this litigation, Plaintiff had a "Twitter" and YouTube account. He had access to all the marketing tactics Defendants Alex and Kristine employed, as fully alleged below. Moreover, Plaintiff was subjected to their material misrepresentations and detrimentally relied on them, as fully detailed throughout this complaint.

6.      Defendant Alex Mashinsky ("Defendant Alex") is a resident and citizen of the State of New York.  Defendant Alex is a co-founder and former CEO of Celsius Network, LLC. He controls Celsius Network LLC through his 83.7% equity stake in Celsius Network, Inc., which owns 65.32% shares of Celsius Network Limited, which wholly owns Celsius US Holding LLC, which in turn is the sole owner of Celsius Network LLC. Throughout all relevant time periods of this matter, Defendant Alex conducted business from New York and still remains a resident of the State.

7.      Defendant Kristine "Krissy" Mashinsky ("Defendant Kristine") is a resident and citizen of the State of New York. Defendant Kristine was married to Defendant Alex during the relevant time period of this litigation and is still his wife.

8.      Plaintiff is ignorant of the true names and capacities, whether individual, corporate, associate or otherwise, of the Defendants sued herein under fictitious names Does 1 through 25, inclusive, and for that reason sues said Defendants, and each of them, by such fictitious names. Plaintiff is informed, believes, and thereupon alleges that each of the Defendants Does 1 through 25, inclusive, is and was in some manner responsible for, participated in, or contributed to the matters and things of which Plaintiff complains herein, and in some fashion, has legal responsibility therefore. When Plaintiff ascertains the names and capacities of the fictitiously named Defendants Does 1 through 25, inclusive, Plaintiff will seek leave to amend this Complaint to set forth such facts. Plaintiff is informed, believes, and thereupon alleges that each Defendant is, and at all times relevant herein was, the agent of his, her or, its co-defendants, and in committing the acts alleged herein, was acting within the scope of his, her, or its authority as such agent, and with the knowledge, permission and consent of his, her or, its co-defendants.

## JURISDICTION AND VENUE

9.      <u>Subject Matter Jurisdiction:</u> This Court has subject matter jurisdiction on the basis of diversity pursuant to  28 U.S.C. §1332 because: (1) Plaintiff resides in a different state than Defendants, in that Defendant Alex and Defendant Kristine are residents of

New York, while Plaintiff is not a resident of New York;  and (2) since the amount in controversy exceeds the sum of $75,000.00, exclusive of interests and costs.

10.    Personal Jurisdiction: This Court has personal jurisdiction over Defendants Alex and Defendant Kristine because both individuals reside in the State of New York, and conduct business in and throughout the State of New York. Furthermore, the wrongful acts alleged in this complaint were committed by Defendant Alex and Defendant Kristine  in and among other venues of New York.

11.    Venue: Venue is proper in this District pursuant to: (1) 28 U.S.C. §1391(b)(2) in that. a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district, and 28 U.S.C. §1391(d) because the conduct giving rise the claims occurred in New York County, New York; and (2) 28 U.S.C. §1391(b)(3) because Defendants Alex and Kristine reside in New York County and subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

12.    Defendant Alex launched the Celsius Company in 2017. As the CEO and majority owner of the Celsius Company, Defendant Alex had access to control over its overall operations and corporate strategy. He maintained familiarity with the Celsius Company's day-to-day operations, business and financial affairs, as well as its books and records.  During a November 2022 interview, one of Celsius Company's former chief revenue officers confirmed that even if 90% of the Celsius Company's management agreed on something, Defendant Alex had the unilateral veto power to override the team's vote. Similarly, Defendant Alex had final decision-making authority over reward rates for primary coins on the Celsius Company's platforms.

13.    As part of the Celsius Company's products and services, Plaintiff and similarly-situated customers and users, could transfer cryptocurrency from their own digital wallet into their Celsius account, buy cryptocurrency through the Celsius app using dollars or other cryptocurrency. After customers transferred their interest to the

Celsius Company, as Plaintiff did, they could earn interest on that cryptocurrency or use it as a collateral against which to borrow.

14.     The Celsius Company's key feature was its "Earn" program, which allowed investors to earn interest on cryptocurrency deposited into the Celsius Company's "earned interest account" ("EIA"). Celsius promoted EIAs by advertising some of the highest yields in the market. EIA investors transferred their cryptocurrency to the Celsius Company. From there, Defendant Alex and his business pooled the deposited digital assets and invested them in various revenue-generating activities. Defendant Alex, through the Celsius Company, had control over the use of EIA assets, while the customers, such as Plaintiff and individuals who actually owned the interest-bearing assets, had no control or discretion over the Celsius Company's investment decisions.

15.     Defendant Alex marketed the Celsius Company as an institution that was "democratized" and '[b]uilt on the belief that financial services should only do what in the best interest of the community."  Defendant Alex designed the Celsius Company's website to market that a critical part of the company's mission was to "provide fair and transparent services."

16.     Defendant Alex was Celsius' primary promoter and spokesperson.  He appeared regularly in interviews, at cryptocurrency conferences, and on social media, including Twitter and YouTube.  Defendant Alex made many of his YouTube and other interviews accessible directly from the Celsius Company's website.

17.     Between 2018 and at least June 2022, Defendant Alex continuously promoted the Celsius Company through weekly YouTube videos which he broadcast on Fridays, often from his New York City apartment. During these "Ask Mashinsky Anything ("AMA") weekly YouTube videos, customers could use a chat function to submit questions and comments, which Defendant Alex responded to or addressed live. Between 2018 and June 2022, Defendant Alex recorded at least 179 AMA episodes. Each of these episodes was approximately one hour long and watched by thousands of individuals.     Defendant    Alex    systematically    furthered    various    material

misrepresentations about the Celsius Company through his AMA shows. For example, from 2018 until at least 2020, Defendant Alex's AMA video expressly promised to "act in the best interest of investors," and disseminated explicit claims about low-interest loans, such " Earn up to 15% APY on your digital assets and take out a loan starting at just 1% APR when using our Celsius wallet."

18. Plaintiff viewed a substantial majority, and likely all, of the AMAs Defendant Alex broadcast on YouTube. Hence, Plaintiff was exposed to all the material misrepresentations Defendant Alex perpetuated through the AMA YouTube episodes. Plaintiff reasonably relied on the claims Defendant Alex perpetuated in his videos, including Defendant Alex's statements about low-interest loans, and the Celsius Company acting in the best interest of investors.

19. To maximize the chances of Plaintiff, and similarly situated investors and potential customers would be tricked by Defendant Alex's AMA videos and misled into opening an account with the Celsius Company, Defendant Alex filled his YouTube videos with direct links to the Celsius Company's' website and application.

20. In addition to social media, Defendant Alex used clothing as a further medium to disseminate his lies. In his public appearances, including advertisements and marketing schemes that targeted his social media followers and Celsius Company customers, Defendant Alex habitually wore branded t-shirts that repeated the slogans he made throughout his AMAs. These slogans included: unbank the banked and bank the unbanked," and "banks are not your friends."

21. Defendant Alex lured investors to the Celsius Company by promising that the Celsius Company would keep their cryptocurrency assets safe and would pay outsized yields by using those assets to make low-risk loans. Defendant Alex attracted customers to open accounts with the Celsius Company and deposit their accounts with his businesses my reiterating false statements that the digital assets deposits with the Celsius Company were as safe as, or even safer than, money deposited in a traditional bank. In a March 7, 2019 interview, Defendant Alex claimed that the money deposited

with the Celsius Company was "as safe as it was with the bank, which is the alternative, it's just that [Celsius] network is always. Acting in your best interest."  Plaintiff relied on the statements made in this 2019 interview and it was reasonable for him to do so because Defendant Alex conducted the interview at the NASDAQ Marketside in Times Square. Defendant Alex further ingrained his deceptive statements about Celsius Company's safety in a YouTube interview from December 3, 2020, and from August 2, 2021, when he stated " [the Celsius Company has] less risk, we have much less risk [than banks]." However, as affirmed by the Celsius Company's eventual bankruptcy, and various sources, including several state attorney generals and an independent investigation from 2023, Defendant Alex's repeated statements about the Celsius Company being as safe or safer than a bank were materially false and misleading.

22.  Indeed, Plaintiff believed these claims and was influenced by them to deposit at least $700,000.00 with the Celsius Company. Plaintiff saw Defendant Alex's YouTube AMAs, as well as Defendant Alex's twitter marketing that touted how safe and risk-free the Celsius Company way.  Based on Defendant Alex's statements, Plaintiff believed his digital cryptocurrency deposits were genuinely protected. In reliance on Defendant Alex's statements, Plaintiff not only opted to deposit his digital cryptocurrency with the Celsius Company, but also chose to refrain from withdrawing the property.  Defendant Alex knew and could have reasonably foreseen that Plaintiff, and potential customers and similarly-situated investors would be misled by and believe his material misrepresentations.

23.  To further mislead Plaintiff and Celsius Company customers about the safety level his businesses provided for their cryptocurrency deposits, Defendant Alex marketed promises that the Celsius Company would take full responsibility for safeguarding investor assets, including from any shortfalls or loss of caused by Celsius' use or "deployment" of investors' cryptocurrency assets. In an AMA from December 10, 2021, which Plaintiff saw, Defendant Alex proclaimed that "Celsius takes full responsibility if anything goes bad," and further promised that if "something bad happens

with the Celsius deployment, Celsius [is] standing behind it." Moreover, along with lying about the safety of the Celsius Company, Defendant Alex misled Plaintiff and other investors to believe that Celsius Company's competitors' lacked reliable protection measures for cryptocurrency assets and that other platforms failed to provide safe deposit protocol. To make sure Plaintiff and other investors and potential customers fell for his tricks and unknowingly transferred all their cryptocurrency to his control, Defendant Alex tripled-down on his fraud by misrepresenting the number of customers the Celsius Company possessed. When reasonable individuals see that a digital cryptocurrency platform has several hundred thousand users, they will do as Plaintiff did, and perceive the platform to be a genuinely safe place for depositing their money and crypto-assets.

24.    Defendant Alex grossly misrepresented the safety level that the Celsius Company provided for investors' deposits. In reality, the money and digital cryptocurrency that Plaintiff deposited his Celsius Company account was anything but safeguarded or protected. On the contrary, Defendant Alex used Plaintiff's assets to lend money to unvetted borrowers and make uncollateralized loans.  Instead of disclosing this truth to Plaintiff, Defendant Alex purposely promoted blatant lies, and represented to Plaintiff that the Celsius Company gave out only low-risk collateral loans to reputable institutions. Had Plaintiff known that truth, and learned about how the Celsius Company was using his assets to give out uncollateralized loans to high-risk borrowers, he would not have deposited $700,000.00 into a Celsius Company account. Likewise, had Plaintiff known the truth about Defendant Alex's unsafe loaning practices, Plaintiff would have withdrawn his money from Defendant Alex's businesses before June 2022.

25.    Defendant Alex subjected Plaintiff, as well as other investors and potential customers to his lies about Celsius Company's loaning practices. In a Celsius website post from March 12, 2019,  Defendant Alex wrote that the Celsius Company's team is "hard at work acting in [investors'] best interest" and that his business model was "straightforward and transparent." In the same post, Defendant Alex made clear that "[the Celsius Company lends] our community's assets to crypto exchanges and hedge

funds looking to borrow coins." That is, Defendant Alex was very specific in his promises and perpetuated promises that constitute material representations. His statements unequivocally extended beyond mere puffery. In a YouTube video from August 5, 2021, entitled "How Crypto Yields Work," Defendant Alex claimed that his business model for the Celsius Company enabled him to "pay investors almost 100 times more than your bank pays you, and we do that without taking any risk or taking minimal risk." Two months later, in a December 10, 2021 AMA, Defendant Alex again reiterated "Celsius [doesn't pay investors] by taking risk." However, as Defendant Alex later attested to in July 2022 during bankruptcy proceedings, through the Celsius Company, he unquestionably took major risks with Plaintiff's several hundred thousand dollars as well as other investors' money, to mete out uncollateralized loans to unsafe sources.

26.    Critically, Defendant Alex and Defendant Kristine did not risk their own money on risk loans, and instead manipulated the Celsius Company bankruptcy to short squeeze their own assets. Hence, Defendants Alex and Kristine purposely tricked individuals out of property and money, and sacrificed those funds to increase and maximize their own personal monetary gains. Indeed, members of the Celsius Company's management team confirmed that "we spent all [the Celsius Company's] cash paying executives and trying to prop up Alex's net worth in CEL Token."

27.    Plaintiff saw Defendant Alex's August 5th and December 10th YouTube segments from 2021 and relied on them to conclude that the Celsius Company was a risk-free platform to deposit and hold his digital crypto-assets.

28.    Defendant Alex knowingly misled Plaintiff and repeatedly chose to lie to investors. He continuously breached his fiduciary duties and utterly failed to provide a modicum of openness to Plaintiff and investors, in direct contradiction of his public statements about the Celsius Company being transparent. The Celsius Company was incurring losses as early as February 2021 and throughout 2021 and 2022. Yet, during this time period of loss and being in the red, Defendant Alex spread only false statements and told investors like Plaintiff that their assets were safe and that his companies were

generating high yield through low-risk investments. In June 2021, his Celsius Company lost access to 35,000 Ether worth tens of millions of dollars on a third-party service and he never recovered those assets. Defendant Alex entirely failed to disclose this loss to Plaintiff and to any investors or customers when it occurred. In December 2021, Celsius lost Bitcoin then valued at approximately $50 million in a hack on the DeFi protocol BadgerDAO. And yet, during a YouTube interview from June 1, 2022, Defendant Alex told Plaintiff and other viewers, that ninety percent of the Celsius Company's business has had nothing to do with DeFi since 2017, even though he knew his company was actually losing hundreds of millions of dollars on DeFi protocols. Similarly, in May 2022, when prices of the digital asset "Luna" crashed, Defendant Alex deceptively assured investors, including Plaintiff, that the crypto-assets they had deposited in his Celsius Company had no exposure to the Luna project. This was blatantly untrue because at the time of the Luna crash, Defendant Alex had $935 million of Celsius Company customers' money invested in Luna.

29.    Defendant Alex repeatedly told investors that the Celsius Company only made loans that were collateralized. In a May 19, 2020, YouTube interview, for instance, he stated that "we are only doing asset-backed lending.... We only lend against collateral...without exception.... We have over one hundred percent collateral." In a July 17, 2020, AMA, Defendant Alex stated that "Celsius does not do non-collateralized loans" because "that would be taking too much risk on [customers'] behalf." In his November 6, 2020, AMA, he reiterated that "We do not do...unsecured lending." Similarly, in an April 13, 2022,  interview with CNBC International, Defendant Alex maintained that "[the Celsius Company doesn't] offer any non-collateralized loans." Hence, in light of being exposed to and seeing these representations, it was reasonable for Plaintiff to conclude that the Celsius Company only gave out collateralized loans. In an AMA from  November 6, 2020, Defendant Alex stated that Celsius "only lend[s] to the first-tier institutions, first tier exchanges...." On April 13, 2022, Defendant Alex lied that the Celsius Company dealt only with "very credible" institutional counterparties.

Yet, in reality, the Celsius Company did not loan out assets only to credible or reputable counterparties. Instead, Defendant Alex took major risks with the monetary property of Plaintiff and other Celsius Company users. Under Defendant Alex's control and direction, the Celsius Company routinely exposed investors' assets to high-risk counterparties and strategies, and suffered multiple large losses, which Defendant Alex concealed from investors such as Plaintiff, despite repeated promises of transparency.

30.    Defendant Alex's statements that the Celsius Company abstained from non-collateralized loans were materially false and misleading. Between 2020 and 2022, the Celsius Company undoubtedly handled Plaintiff' (and other customers) money in a risky manner and used it to give out uncollateralized loans. In 2020, the Celsius Company made almost $10 million in uncollateralized loans. In 2021, it gave out at least $203 million in uncollateralized loans and in the first half of 2022, Defendant Alex directed the Celsius Company to  make at least $394 million in uncollateralized loans. From 2020 through June 2022, he used the Celsius Company and solely used monetary property of Plaintiff and other investors to  make over 100 uncollateralized loans to at least 19 different counterparties.  Furthermore, Defendant Alex's statements about the safety of the Celsius Company's investments were materially false and misleading because Celsius had not "figured out what's safe." In fact, Celsius suffered numerous losses caused by known risks.

31.    Defendant Alex knew that the high yield promised by the DeFi Protocol, "Anchor Protocol" was too good to be true. During a YouTube interview on December 3, 2021, he himself told investors that because "not all yield is created equal," the Celsius Company only used "safe protocols," was "very skeptical," and "careful and [worked] with very few companies." He cautioned that "if somebody's offering you [a yield] of 20%, I would be very careful digging into why and how they're paying it."  That is, Defendant Alex publicly acknowledged the risks of investing in entities that adhered to Anchor Protocol's business model and paid unreasonably high yields that were subsidized by the protocol founders. And yet,  behind closed doors away from the eye of

Plaintiff and Celsius Company investors, Defendant Alex chose to deposit Plaintiff's and Celsius Company investors' assets onto Anchor Protocol.

32.    On May 13, 2022, in a patently untruthful effort to deter customers from withdrawing their digital assets and emptying out their Celsius Company accounts, Defendant Alex deliberately disseminated false information in his YouTube AMA episode, and told viewers that the Celsius Company had billions of dollars in liquidity. He knew this information was not true. For one thing, the Celsius Company had experienced its largest day of withdrawals just the day before, when investors withdrew nearly half a billion dollars from the platform in one day. During a YouTube interview from May 16, 2022, Defendant Alex reiterated his lies about the financial viability and strength of the Celsius Company. He told viewers that "[the Celsius Company is] standing strong…that [it] is ready with the liquidity, [and] providing everybody the option." Plaintiff saw both of these YouTube interviews and based on Defendant Alex's material misrepresentations about the Celsius Company's liquid assets, Plaintiff refrained from withdrawing at least $700,000.00 of assets and monetary funds from Defendant Alex's platform. Had Plaintiff known the truth and been notified of the fact that the Celsius Company actually had net assets of negative $820 million, Plaintiff would have taken his all the assets out of his account and opted against depositing any money  or digital assets with Defendant Alex's Celsius Company.

33.    In June 2022, specifically to dissuade Plaintiff and other similarly-situated investors away from withdrawing their funds, Defendant Alex systematically furthered false statements about the Celsius Company's liquidity.  During an interview from June 1, 2022, Defendant Alex expressly told viewers that users' deposits were safe with the Celsius Company, and that anyone could withdraw their funds with "no problem." In a June 10, 2022 AMA YouTube video, Defendant Alex reiterated these statements and proclaimed that The Celsius Company has "billions in liquidity" and that "[it] provides immediate access to everyone, anyone who needs access it to it the liquidity."  This was blatantly untrue and Defendant Alex knew it.  But he needed to lie to customers, so that

he could have more money to control and keep playing other people's assets to increase his own personal wealth.  In reality, the Celsius Company was about $900 million in deficit and planning to pause customer withdrawals, which it did two days later.  Plaintiff saw Defendant Alex's June 1st and June 10th interviews.  Based on the statements Plaintiff heard Defendant Alex make in these two YouTube broadcasts, he reasonably concluded that it was safe for him to leave his crypto-currency and digital assets with Defendant Alex's Celsius Company. Had Plaintiff known the truth, that Celsius was $900million in the red, and planning to block his access to his own accounts and pause withdrawals, Plaintiff would have taken his money out of the Celsius Account.

34.    From the inception of the Celsius Company, Defendant Alex conducted his companies in a starkly different manner than how he marketed it to customers in every key respect. During his weekly AMA YouTube, Defendant Alex repeatedly told the Celsius Company individuals that customer-deposited coins "are your coins, not our coins…[i]ts's always your Bitcoin." Throughout his YouTube weekly episodes, Defendant Alex even told viewers that in the event of a bankruptcy, the Celsius Company would return coins to their owners. Yet, in reality, the exact opposite happened. The hidden terms Defendant Alex devised and chose to implement for people actually transferred Celsius Company's customers crypto assets to his company's ownership. That is, behind customers backs' Defendant Alex tricked them into transferring their hard-earned digital assets and money to his control.  Without their consent, Defendant Alex used customers' deposits, including Plaintiff's crypto-assets, to drive up the price of CEL tokens, a digital asset that Defendant Alex and Defendant Kristine owned. For example, Defendant Alex directed the Celsius Company management team to use customer-deposited cryptocurrency, including Bitcoin and Ether, to find do buyback schemes so that Defendant Alex's own CEL tokens would increase in value. Between 2018 and July 2022, Defendant Alex made at least $68.7 million in profits from the fraud the perpetuated against Plaintiff and other similarly-situated customers.

35.   Additionally, the reward rates Defendant Alex promised to customers, including Plaintiff, did not match what the Celsius Company actually paid out to them. Defendant Alex is the person that repeatedly chose to keep marketing false return rates and yields to Celsius Company customers and Plaintiff. Ultimately, in June 2022, as a result of Defendant Alex's false promises about the Celsius Company's reward rates,  his businesses owed customers about $1.36 billion. Without doubt, the Celsius Company did not have enough money to cover this total, given that customers' deposits totaled less than $1.36 billion.

36.   In 2021, Defendant Alex told Financial Times newspaper that "[f]rom a risk standpoint, we are probably one of the least risky businesses that regulators worldwide have ever seen." Additionally, throughout his AMA YouTube videos, Defendant Alex told customers that "[the Celsius Company] only does asset back lending so always have 200% collateral." In a separate AMA, he told customers "we do not do unsecured lending." Plaintiff saw all these AMA video and was influenced by Defendant Alex's promises to conclude that Plaintiff's digital assets were safe when deposited with Defendant Alex's Celsius Company. However, all of Defendant Alex's statements were utterly false and misleading. In December 2020, approximately 14% of the loans the Celsius Company gave out were unsecured. By June 2021, at least one-third of its loans were unsecured, while fifty percent of the Celsius Company's loans were under-collateralized.  As Celsius Company's CEO, Defendant Alex knew and should have been aware of the high risk he was taking when using customers' deposits to give out loans.

37.   Defendant Alex told customers that the crypto assets they deposited with his Celsius Company were "your assets" and that the coins belonged to the customers. But, in reality, since March 2020, the user terms Defendant Alex enforced for his Celsius Company's user terms stated that customers transferred "all rights of ownership in his crypto assets by depositing them in a Celsius account." While Defendant Alex told customers that in the event of a bankruptcy, they would get their coins back, his Celsius

Company's terms of use said that in an event of a bankruptcy, customers might not be able "to recover or regain ownership" of their crypto assets.

38.   Defendant Alex undoubtedly controlled the substance of his weekly YouTube AMAs and oversaw the narrative that was presented to customers and viewers. Defendant Alex chose which guests appeared, what topics were discussed and which customer questions he would address. Defendant Alex further synchronized and orchestrated the misrepresentations he promoted on his AMA episodes by encouraging his several thousand twitter followers to watch the AMA videos.

39.   As affirmed by an independent examiner investigation from 2023, even after pausing customers' withdrawals and blocking individuals from accessing their own money in June 2022, and even after his Celsius Company declared bankruptcy in July 2022, Defendant Alex kept selling and reaping several million dollars in profits from selling his CEL Tokens. Likewise, his wife Defendant Kristine also made substantial profits from selling her CEL Tokens after the Celsius Company bankruptcy. Given the timing of when Defendant Kristine sold her CEL Tokens in the wake of her husband's company's bankruptcy and how closely the timing overlapped with his sales, including the hasty manner in which she conducted transactions in shortly before the Celsius Company's June 2022 withdrawal pause, it is reasonable to conclude that Defendant Kristine purposely participated in and profited from the fraud that was perpetuated against the Celsius Company's customers, including Plaintiff. Indeed, various investigations have determined that Defendant Kristine knew her husband's Celsius Company was insolvent and in dire financial conditions, and was on notice about the falsity of the marketing scheme to which her husband subjected Plaintiff and other customers.

40.   Between April 6, 2022, and July 2022, Defendant Kristine transferred property that belonged to Plaintiff, as well as other Celsius Company customers, to her own personal cryptocurrency wallet. She made these transfers with the intend to hinder, delay or defraud Plaintiff.

41.   Plaintiff opened a Celsius Account in December 2020 and deposited a total of at least $700,000.00 worth of assets with Defendant Alex's Celsius Company during the relevant time period of this litigation. In making his decision to trust his digital assets with the Celsius Company, Plaintiff relied on  the advertising claims Defendant Alex systematically perpetuated throughout his social media.  Plaintiff saw most, and likely all the AMA videos Defendant Alex presented between 2017 and July 2022. Based on the material representations Defendant Alex made in those videos, Plaintiff believed Defendant Alex's claims about his Celsius Company being the safe institution with which to deposit Plaintiff's assets.  Between June 1 and 10, 2022, Plaintiff witnessed Defendant Alex's public statements, including promoted claims on Twitter and YouTube,  about the Celsius Company being financially sound and that the crypto Plaintiff had deposited with the Celsius Company would remain his. Based on these misrepresentations, Plaintiff opted to leave his money deposited with the Celsius Company. Had Plaintiff known that Defendant Alex was lying, he would have withdrawn his assets from the Celsius Company and emptied out his entire account he held with the platform.  To date, Plaintiff has never received any of his assets or coins.  Instead, in direct contradiction to Defendant Alex's public marketing scheme, he kept the entirety of Plaintiff's several hundred thousand dollars of property and digital assets. Thus, Plaintiff remains deprived of several hundred thousand dollars, while Defendants Alex and Kristine still possess the hundreds of millions of dollars they reaped at Plaintiff's expense.

## **RULE 9(B) ALLEGATIONS**

42.   Federal Rule of Civil Procedure ("Rule") 9(b) provides that "[]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b). To the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

43.   <u>WHO</u>: Defendants Alex and Kristine made material misrepresentations and omissions of fact about the safety and benefits of the Celsius Company.  Defendants Alex and Kristine additionally made material misrepresentations to individuals, including Plaintiff, about what was actually being done with the crypto assets they had deposited with Defendants' business. For example, Plaintiff and other similarly situated users did not know that the assets they deposited with Defendants were being used by Defendant Alex and Defendant Kristine to pay off interest owed to other individuals, fund uncollateralized loans and to drive up the price of Defendants Alex and Kristine's personal assets and net worth. As the CEO and co-founder of the Celsius Company, Defendant Alex controlled the marketing and advertising strategy, including its content website and social media presents on YouTube. Additionally, Defendant Alex authorized and gave final approval to the statements that the Celsius Company's websites and social media sites. Moreover, Defendant Alex controlled his Celsius Company's investment decisions and how users' funds were handled and to whom loans were made.

44.   <u>WHAT</u>: Defendants Alex and Kristine made material misrepresentations and omissions of fact across various public social media platforms, such as twitter and YouTube,  regarding the safety and benefits of their businesses. During the relevant time period, Defendants Alex and Kristine systematically  spread lies about the Celsius Company across Twitters, as well as YouTube, including Defendant Alex's weekly YouTube show "Ask Alex Anything."

45.   <u>WHEN</u>: Defendant Alex and Defendant Kristine made the material misrepresentations and omissions detailed herein continuously between at least 2018 and July 2022.

46.   <u>WHERE</u>: Defendant Alex's and Defendant Kristine's material misrepresentations and omissions were made, *inter alia*, on the Celsius Company's website and mobile phone application, their twitter accounts, emails sent to Plaintiff and similarly-situated customers, newspaper interviews, and YouTube videos.

47.  <u>HOW</u>: Defendants Alex and Krissy made written misrepresentations and failed to disclose material facts about the Celsius Company on their twitter accounts, on YouTube, in newspaper interviews, and other advertising and public social communication platforms.

48.  <u>WHY</u>: Defendant Alex and Defendant Kristine engaged in the material misrepresentations and omissions detailed herein for the express purpose of inducing Plaintiff, as well as other customers of the Celsius Company, to keep depositing their assets with the businesses Defendant Alex had founded.  Defendants Alex and Kristine deliberately lied to Plaintiff and similarly-situated users about what was actually happening with the money and assets they deposited with the Celsius Company.  On the contrary, Defendants Alex and Kristine took active steps to hide the truth from Plaintiff about the safety and benefits of the Celsius Company and also purposely misrepresented how they were handling his money. By subjecting Plaintiff to material omissions and misrepresentations, Defendants Alex and Kristine tricked him into entrusting his crypto assets  and depositing his money with the Celsius Company, and ultimately profited of Plaintiff, as well as other  unsuspecting individuals on a nationwide and global scale.

## **FIRST CLAIM OF RELIEF**

### **(Fraud Against Defendants Alex and Kristine)**

49.  Plaintiff re-alleges and incorporates herein by reference each and every allegation set forth above.

50.  Plaintiff brings this claim individually against Defendant Alex and Defendant Kristine.

51.  As discussed above, Defendant Alex and Defendant Kristine provided Plaintiff with false or misleading material information and failed to disclose material facts about the Celsius Company, including but not limited to that fact that these businesses co-founded by Defendant Alex were not in fact protecting customers' deposits or able to pay the interest rates promised for the Celsius Company's "Earn"

reward account. These misrepresentations and omissions were made by Defendant Alex and Defendant Kristine with knowledge of their falsehood.

52.   The misrepresentations and omissions made by Defendant Alex and Defendant Kristine, upon with Plaintiff reasonably and justifiably relied, were intended to induce and actually induced Plaintiff to deposit his money and cryptocurrency with the Celsius Company.

53.   The fraudulent actions of Defendant Alex and Defendant Kristine caused damage to Plaintiff, who is entitled to damages and other legal and equitable relief as a result.

## SECOND CLAIM FOR RELIEF

### (Unjust Enrichment Against Defendants Alex and Kristine)

54.   Plaintiff re-alleges and incorporates herein by reference each and every allegation set forth above.

55.   Plaintiff brings this claim individually against Defendant Alex and Defendant Kristine.

56.   Plaintiff conferred benefit on Defendant Alex and Defendant Kristine by depositing his money and crypto-assets with the Celsius Company.

57.   Defendant Alex and Defendant Kristine have been unjustly enriched in retaining revenues derived from Plaintiff's deposits with the Celsius Company. Retention of those moneys under the circumstances is unjust and inequitable because the Celsius Company lacked its advertised identity, safety and advantages, and was not truly acting as a custodian of Plaintiff's assets or keeping his money safe, and since it ultimately resulted in Plaintiff being denied the full benefits of making deposits with the Celsius Company.

58.   Because Defendant Alex and Kristine's retention of the non-gratuitous benefits conferred on them by Plaintiff is unjust and inequitable, Defendant Kristine and Defendant Alex must pay restitution to Plaintiff for their unjust enrichment, as ordered by the Court.

## THIRD CLAIM FOR RELIEF

### (Intentional Misrepresentation Against Defendants Alex and Kristine)

59.    Plaintiff alleges and incorporates herein by this reference each and every allegation set forth in all previous paragraphs of the Complaint.

60.    Plaintiff brings this claim individually against Defendant Alex and Defendant Kristine.

61.    Defendant Alex and Defendant Kristine, individually and through the Celsius Company and its agents, employees and/or subsidiaries, made materially false representations and omissions to Plaintiff about the actual identity, benefits and safety of the Celsius Company. For example, Defendant Alex repeatedly advertised on his social media accounts that even after a person deposited his crypto assets into a Celsius Company account, the assets still belonged to him. Yet, in reality, without any permissions or authorization, Defendant Alex and Kristine used customers' deposits to buyback CEL tokens and increase the value of their *own* net worth, even though the actions compromised Plaintiff's assets.

62.    These material misrepresentations and omissions were made by Defendant Alex and Defendant Kristine on their. Twitter and YouTube accounts, in correspondences such as emails to consumers, and in various public and social media statements by Defendants Alex and Kristine directed to Plaintiff and other customers of the Celsius Company.

63.    Defendants Alex and Kristine knew or recklessly disregarded the false and misleading nature of their material misrepresentations and omissions.

64.    Defendants Alex and Kristine made the materially false and misleading statements and omissions for the purpose of inducing Plaintiff and the other members of the Class to deposit money into the Celsius Company, so that Defendants Alex and Kristine could personally profit therefrom.

65.    In depositing his assets and money with the Celsius Company, Plaintiff reasonably relied on Defendant Alex and Kristine's materially misleading statements and

omissions that the cryptocurrency and money he deposited would remain his property, that he would be able to withdraw it and use it when he wanted, and that he would actually be paid the interest amounts that Defendants were publicly advertising and promising. Likewise, based on Defendant Alex and Kristine's material misrepresentations and omissions, Plaintiff reasonably believed that his assets were safe with the Celsius Company and not being used for any risky purposes, such as unresearched or uncollateralized loans.

66.   As a result of Defendant Alex and Kristine's materially false and misleading misrepresentations and omissions, Plaintiff sustained damaged as set forth herein.

### **FOURTH CLAIM FOR RELEIF**

### **(Negligent Misrepresentation Against Defendants Alex and Kristine)**

67.   Plaintiff alleges and incorporates herein by this reference each and every allegation set forth in all previous paragraphs of the Complaint as if fully set forth herein.

68.   Plaintiff brings this claim individually against Defendant Alex and Defendant Kristine.

69.   Defendant Alex and Defendant Kristine made representations to Plaintiff about the safety, identity and benefits of the Celsius Company through emails  and correspondence directed to him, and by way of social media platforms like Twitter and YouTube, as well as print media such as newspaper interviews.  Defendants Alex and Kristine made these representations knowing that such claims would be material to a reasonable individuals decision about which company to use for depositing his bitcoin and other crypto assets he owned.

70.   Defendant Alex and Defendant Kristine representations about the Celsius Company, as fully and explained detailed above, were patently false. Defendant Alex and Defendant Kristine had no reasonable grounds for believing these representations were true when they made them, and yet they intended that Plaintiff would rely on these representations.

71.    Defendants Alex and Kristine had a pecuniary interest in the marketing, advertising and promotion of Defendant Alex's Celsius Company and in making the careless, unreasonable and negligent misrepresentations and omissions alleged herein, including to Plaintiff.

72.    Defendant Alex and Defendant Kristine's misrepresentations regarding the identity, safety and benefits of the Celsius Company were material because a reasonable individual would attach importance to them in determining whether to use the Celsius Company as a custodian for his bitcoin or an application with which to deposit his crypto-assets.

73.    Defendant Alex and Defendant Kristine's material misrepresentations about the Celsius Company, including its safety and benefits and how it handled customers' deposits, were patently false and made without reasonable grounds for believing them to be true.

74.    Defendant Alex and Defendant Kristine were in a superior position than Plaintiff to know the material facts about the Celsius Company and about what attributes would influence an individual's depositing decisions.

75.    Defendant Alex and Defendant Kristine could reasonably foresee that Plaintiff was likely to rely upon the misrepresentations and omissions.

76.    Defendant Alex and Defendant Kristine made material misrepresentations about the Celsius Company, including its safety and advantages, with the intent to induce Plaintiff into signing up with the Celsius Company and using it as the platform to deposit his money and crypto-assets.

77.    Under the circumstances, Defendant Alex and Defendant Kristine have a duty to disclose material, truthful information represented or omitted in its careless, unreasonable and negligent misrepresentations and omissions, as set forth herein.

78.    Plaintiff reasonably and materially relied on Defendant Alex and Kristine's material misrepresentations in choosing to sign up with and deposit his assets with the Celsius Company.

79.   As a result, Plaintiff was harmed and suffered damages in an amount to be proven at trial.

**FIFTH CLAIM FOR RELEIF**

**(Conversion Against Defendants Alex and Kristine)**

80.   Plaintiff alleges and incorporates herein by this reference each and every allegation set forth in all previous paragraphs of the Complaint as if fully set forth herein.

81.   Plaintiff brings this claim individually against Defendant Alex and Defendant Kristine.

82.   Defendant Alex and Defendant Kristine intentionally took Plaintiff's property, including at least $700,000.00, with the express intent of depriving him of the property. Indeed, when as a requirement to sign up for an account with one of their businesses, Defendant Alex and Defendant Kristine snuck in hidden provisions into user agreements that transferred Plaintiff's property to them without his knowledge. To make sure Plaintiff did not know about or see these hidden terms,  Defendant Alex systematically told Plaintiff through continuous advertisements that any money he deposited with the Celsius Company would remain Plaintiff's property. Hence, Defendant Alex ensured that Plaintiff would not learn the truth about how Plaintiff's money was actually being taken by Defendant Alex and Defendant Krissy for their personal use.

83.   As a result, Plaintiff was harmed and suffered damages in an amount to be proven at trial.  Plaintiff is entitled to return of the entirety of the monetary property Defendants Alex and Kristine stole from him, damages for the fair market value of the property, and all other available relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant Alex and Defendant Kristine and each of them as follows:

1.   For an order declaring that Defendant Alex and Defendant Kristine's conduct violates the statutes referenced herein;

PLAINTIFF'S COMPLAINT

2.    That the Court awards compensatory, statutory and/or punitive damages as to all Causes of Action where such relief is permitted;

3.    That the Court awards Plaintiff the costs of this action, including reasonable attorneys' fees and expenses;

4.    For an order enjoining Defendant Alex and Defendant Kristine from continuing to engage in the unlawful conduct and practices described herein;

5.    That the Court awards equitable monetary relief, including restitution and disgorgement of all ill-gotten gains, and the imposition of a constructive trust upon, or otherwise restricting the proceeds of Defendant Alex's and Defendant Kristine's ill-gotten gains, to ensure that Plaintiff has an effective remedy;

6.    That the Court awards pre-judgment and post-judgment interest at the legal rate;

7.    That the Court orders appropriate declaratory relief; and

8.    That the Court grants such other and further as may be just and proper.


Dated:        February 15, 2023          **DOGRA LAW GROUP PC**


                                  By: _____
                                       SHALINI DOGRA, ESQ.
                                       Attorney for Plaintiff
                                       THOMAS BULL


## **DEMAND FOR JURY TRIAL**

Plaintiff THOMAS BULL hereby demands a jury trial for the causes of action set forth herein.


Dated:        February 15, 2023          **DOGRA LAW GROUP PC**

                                  By: _____
                                       SHALINI DOGRA, ESQ.
                                       Attorney for Plaintiff
                                       THOMAS BULL